**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KATRINA TOYA HAMPTON,

    *Plaintiff,*

  v.

WELLS FARGO BANK, N.A.

    *Defendant.*

Case No. 25-cv-1935-ABA

**MEMORANDUM OPINION**

Plaintiff Katrina Toya Hampton has sued her creditor, Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), for $645,000 and the discharge of her mortgage obligation to Wells Fargo, alleging breach of contract, promissory estoppel, and unjust enrichment. She also seeks to quiet the title to the property at 10907 Marlboro Crossing Court, Cheltenham, Maryland (the "Property") and obtain a declaration that she is the sole owner of the Property. Wells Fargo has filed a motion to dismiss. For the reasons stated below, the Court will grant the motion to dismiss.

**BACKGROUND**

In 2012, Ms. Hampton obtained a mortgage loan from Wells Fargo for the Property. *Hampton v. Wells Fargo Bank N.A.*, Case No. 24-cv-00745-PX, 2025 WL 297849, at *1 (D. Md. Jan. 23, 2025); *see also* ECF No. 5-1 at 2. On two separate occasions, Ms. Hampton "fell behind" on mortgage payments but reached a loan modification agreement with Wells Fargo instead of proceeding with the respective pending foreclosure actions. *Hampton*, 2025 WL 297849 at *1. In 2024, Ms. Hampton filed a civil action against Wells Fargo and its Chief Executive Officer, contending that Wells Fargo "attempt[ed] to collect a debt by harassment, . . . use[d] false, deceptive misleading, unfair or unconscionable means, . . . and attempt[ed] to collect the debt without first 'validating' it in response to Hampton's written

requests." *Id.* at *2. Ms. Hampton contended that these alleged claims amounted to multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and embezzlement, 18 U.S.C. § 641. *Hampton*, 2025 WL 297849, at *1. That case was dismissed on January 23, 2025 for lack of personal jurisdiction over the CEO of Wells Fargo, *id.* at *3, and for Ms. Hampton's failure to state a claim against Wells Fargo. *Id.* at *5.

In the present action, Ms. Hampton alleges receipt of a "Presentment," or a "pay off statement," from Wells Fargo on March 24, 2025. The "Presentment" allegedly demanded $595,526.94 in payment, related to the 2012 mortgage loan and subsequent modifications for the Property. ECF No. 3 ¶¶ 6–7; ECF No. 3-1 at 11—14.

On March 25, 2025, Ms. Hampton, through a notary, sent to Wells Fargo what she called a "Notice of Conditional Acceptance" ("Notice") "in exchange for closure and settlement" of an account ending in 6164. *Id.* at 2. The "account" number is consistent with the loan number identified in the "Presentment." *Id.* at 11. Through this Notice, Ms. Hampton purported to authorize Wells Fargo "to facilitate the use of [her] credit to this obligation." *Id.* at 2. Ms. Hampton also stated that "Scott Bessent [the Secretary of the Department of the Treasury] is also being notified" that she intends to use her "credit" to settle the account ending in 6164. *Id.*

It is not clear to what "credit" Ms. Hampton was referring. She provided to Wells Fargo what she purported was an authorization to the Department of Treasury to make a withdrawal from her "UCC Contract Trust Account" through an international bill of exchange (the "Bill of Exchange"), payable to Wells Fargo for $595,526.94. *Id.* at 10. The Bill of Exchange, purported to be an "[o]bligation of the United States," supposedly served to render "[s]ettlement in [f]ull [s]atisfaction" to close out the loan account. *Id.* Through these allegations, it appears that Ms.

2

Hampton is espousing a version of the baseless "redemption" theory, which the Court will discuss below.

The Notice stated that Wells Fargo's failure to confirm or provide "notice of dishonor" would serve as an agreement that Wells Fargo "collectively and severably" owes Ms. Hampton $640,000 and that she "may take all necessary steps to secure it's [*sic*] claim to the debt owed to it and to collect." *Id*. at 2. On April 7, 2025, Ms. Hampton sent an additional notice and "Affect [*sic*] of Failure to Respond." *Id*. at 7.

On April 21, 2025, in a "Certificate of Non-Response" Ms. Hampton alleged, again through her notary, that Wells Fargo "dishonored" Ms. Hampton

> through their non response [*sic*], and thereby agree that Katrina-Toya: Hampton accepted the subject payoff Statement (request), returned the payoff request, exchanged her exemption for the discharge of the associated loan, presented and [*sic*] authorization for use of her credit to setoff the associated loan balance, included processing instructions, included a statement of account showing a zero balance, sent a letter of credit to the Secretary of the United States Treasury Department.

*Id*. at 9.

The Certificate of Non-Response asserts that because of Wells Fargo's silence on the matter, the account is "settled and closed," and that Wells Fargo has "no capacity to pursue collection on said account, and that further pursuit of collection is an agreement that Wells Fargo Bank N.A. collectively and severably owes KATRINA T HAMPTON $640,000" for expenses and handling the "Presentment." *Id*. With this letter, Ms. Hampton produced a "Statement of Account," dated March 25, 2025, with a purported balance of zero dollars. According to that document, a failure to correct and return the Statement within two weeks "constitutes . . . agreement" with the Statement. *Id*. at 15.

3

There is nothing in the record to indicate that Ms. Hampton attempted to satisfy this debt with anything other than through the purported "credit" described above. In fact, in another letter dated April 22, 2025, Ms. Hampton stated that "the narrow view that money is limited to legal tender is rejected" per § 1-201(24) of the Uniform Commercial Code (UCC) and is not limited to United States currency. *Id.* at 19. Ms. Hampton articulated that Wells Fargo "cannot mandate that [she] fulfill any debt using a specific form of currency or cash," and that Wells Fargo's inaction cured any defects. *Id.*

In the instant Complaint filed in state court in 2025, Ms. Hampton claims that, as a result of the actions described above, Wells Fargo (1) has been unjustly enriched at her expense, (2) breached a tacit agreement to respond or negotiate in good faith, (3) breached a promise to engage in resolution discussions to the detriment of Ms. Hampton, and (4) violated the doctrine of promissory estoppel for failing to resolve the issue. ECF No. 3 ¶¶ 15–18. In addition to $645,000, Ms. Hampton is seeking various equitable remedies, including discharge from her mortgage obligation and an order quieting title to the Property. *Id.* ¶¶ 22–32. On June 17, 2025, Wells Fargo removed the case to this Court based on diversity jurisdiction and then moved to dismiss. ECF Nos. 1 & 5. Ms. Hampton responded to the motion and moved to remand, and Wells Fargo replied. ECF Nos. 7 & 8.

**STANDARD OF REVIEW**

**A.    Jurisdiction**

Federal courts have limited jurisdiction and are "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Accordingly, federal courts have original jurisdiction over civil cases, with some exceptions that are not relevant here, in only two instances: (1) under federal

4

question jurisdiction, where the case involves an issue of federal law, *see* 28 U.S.C. § 1331, or (2) under diversity jurisdiction where no defendant may be a citizen of the same state as any plaintiff and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. The Court has "an independent obligation to determine" the existence of subject-matter jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). As stated, Wells Fargo removed this case based on diversity jurisdiction. ECF No. 1.

**B.     Stating a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails to "state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

**DISCUSSION**

**A.     Plaintiff's Motion for Remand**

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. As previously stated, federal courts have original jurisdiction over civil

cases where no defendant is a citizen of the same state as any plaintiff, and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. "Courts generally determine the amount in controversy by reference to the plaintiff's complaint." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010); *see also Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981) (The plaintiff's original claim is generally determinative of the jurisdictional amount, "provided that the claim is made in good faith."). "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of [her] volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

Ms. Hampton's Motion to Remand to State Court, which is incorporated into her response to the Motion to Dismiss, asserts that, because the amount in controversy does not exceed $75,000, diversity jurisdiction under 28 U.S.C. § 1332 is not satisfied. ECF No. 7 at 3. Instead, Ms. Hampton avers that she is seeking "exclusively equitable relief," *id*. at 1, despite "request[ing] the court to order Defendant to pay the sum certain $645,000" in her Complaint, ECF No. 3 ¶ 25, and elsewhere in accompanying documents. *See* ECF No. 3-1 at 2, 9, 17. With respect to the citizenship of the parties, Ms. Hampton is a citizen of Maryland. ECF No. 3 at ¶ 2. Wells Fargo, the only defendant in this case, is a citizen of South Dakota for purposes of diversity jurisdiction. ECF No. 1 ¶ 5.

Notwithstanding Plaintiff's later attempt to purely claim equitable relief, the parties satisfy the amount in controversy and residency requirements of diversity jurisdiction. Ms. Hampton seeks in the Complaint $645,000 in damages and the

6

release of a $595,526.94 loan, and the parties are diverse. This Court has diversity jurisdiction over Ms. Hampton's claims.

### B.    Failure to State a Cognizable Claim

Through deciphering Ms. Hampton's claims and asserted legal theories, it appears that she advances a form of the meritless "redemption" theory. Proponents of "redemption" theory falsely allege that they have a "monetary net worth" in an account maintained by the U.S. Department of the Treasury. *See Sovereign Citizens: A Growing Domestic Threat to Law Enforcement*, FBI Law Enforcement Bulletin (Sep. 1, 2011), https://leb.fbi.gov/articles/featured-articles/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement. To access these funds and to pay creditors, those who employ this "redemption" theory file "pseudo-legal document[s] meant to serve as a repayment of debt." J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, Geo. Wash. Program on Extremism (June 2016), at 6, https://extremism.gwu.edu/sites/g/files/zaxdzs5746/files/downloads/JMB%20Sovereign%20Citizens.pdf. These "documents" may include UCC forms. FBI Law Enforcement Bulletin, *supra*. Adherents to "redemption" theory believe that such conduct "will compel the U.S. Treasury to fulfill [their] debts, such as credit card debts, taxes, and mortgages." *Id*.

Courts in this District and others have resoundingly rejected claims rooted in "redemption" theory. Recently in *Potter v. Verizon Communications, Inc.*, the plaintiff had entered into a monthly contract with Verizon for phone and Internet services and was seeking relief on the premise that, "because he paid for his monthly phone and Internet services on credit, he is now a creditor of Verizon and that Verizon is responsible for paying interest" to him. *Potter v. Verizon Commc'ns Inc.*, Case No. 24-cv-1856-BAH, 2024 WL 3757901, at *1 (D. Md. Aug. 12, 2024). The Court there recognized the advancement of "redemption" theory, and its frequent use

in fraud schemes, noting that "[c]ourts around the country have repeatedly dismissed as frivolous similar claims" and there was "no reason to deviate from the sound reasoning of th[o]se cases" in dismissing Mr. Potter's complaint. *Id*. at *2 (collecting cases).

The Court of Appeals for the Fourth Circuit has not yet addressed this issue, but the Third Circuit has in *Miller v. Peco Exelon*. There, Mr. Miller "complain[ed] primarily that the named Defendants are liable to him because they refused to accept 'Government Obligations Remittance Coupons' he had prepared as 'tender' for payment of his utility bills." *Miller v. PECO Exelon*, 775 Fed. App'x 37, 37 (3rd Cir. 2019). The Third Circuit found Mr. Miller's claims to be "baseless assertions," understanding Mr. Miller's logic "to be based on . . . his understanding of the Uniform Commercial Code and a belief that 'there is no lawful money.'" *Id*. at 37—38.

Based on Ms. Hampton's complaint and the accompanying documents, the "redemption" theory is at the core of her claims. In response to what Ms. Hampton describes as a "Presentment" from Wells Fargo detailing her mortgage loan valued at $595,526.94, ECF No. 3-1 at 11—14, Ms. Hampton "enclose[d] an *authorization* . . . to facilitate the use of [her] *credit* to this obligation." *Id*. at 2 (emphases added). She also informed Wells Fargo of a notice provided to Scott Bessent—the current Secretary of the U.S. Department of the Treasury—of her use of "credit for this purpose." *Id*. To effect the use of this "credit," Ms. Hampton claims she executed a "bill of exchange" to compel the U.S. Department of the Treasury to withdraw funds from her non-existent "UCC Contract Trust Account." *Id*. at 5, 10.

Ms. Hampton does not allege that she used any form of legal tender to resolve her debt with Wells Fargo. Her attempt to use a "UCC Contract Trust Account" is of Ms. Hampton's own creation, *id*. at 5 & 10, and it cannot be used to satisfy her financial obligations. *Archer v. Cabarrus County Courthouse*, Case No. 24-cv-531,

2025 WL 1103993, at *7—8 (M.D.N.C. Apr. 14, 2025) (declining to allow the use of an alleged UCC Contract Trust Account to pay fines). Moreover, Ms. Hampton rejects Wells Fargo's mandate that she "fulfill her debts using a specific form of currency or cash." ECF No. 3-1 at 19.

There is plainly no legal basis for this theory. Ms. Hampton cannot merely state that—because her "credit," and no other legal tender, is being used to resolve the Wells Fargo loan—her balance on that loan "is zero." *Id.* at 2. Nor can she merely state that Wells Fargo's alleged failure to acknowledge her assertions to payment via "credit" results in its own liability. *Id.* Ultimately, Ms. Hampton is attempting to avoid paying her mortgage by using a "redemption" theory that has no legal or factual basis and cannot prevail.

The Court turns now to address Ms. Hampton's specific claims, which all lack any valid legal basis.

### 1.   Unjust Enrichment

Under Maryland law, a claim of unjust enrichment arises where "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit" without paying its value to the claimant. *Benson v. State*, 389 Md. 615, 651–52 (2005). Ms. Hampton alleges that "Defendant has been unjustly enriched at [her] expense . . . as Defendant has retained benefits resulting from Plaintiff's actions without providing any compensation or lawful basis for [her] demands." ECF No. 3 ¶ 15. Ms. Hampton further alleges that she has "provided value with the expectation of a lawful and equitable resolution, which was not reciprocated" by Wells Fargo. *Id.* ¶ 16. But even accepting as true all of Ms. Hampton's *factual* allegations (as opposed to her legal conclusions), the complaint

9

does not allege facts that would establish that Ms. Hampton has "confer[red] a benefit upon" Wells Fargo by attempting to settle her mortgage debts with a fictitious means of legal tender, or that Wells Fargo has been enriched by Ms. Hampton's non-payment of her obligations under the mortgage.

2.    Breach of Contract

"A valid contract is formed by, among other elements, an offer and acceptance and consideration." *Braude v. Robb*, 255 Md. App. 383, 397 (2022). And under the objective theory of contracts, which applies in Maryland, the terms of a contract constitute the terms that "a reasonably prudent person in the same position would have understood as to the meaning of the agreement." *Id.* at 398 (citing *Cochran v. Norkunas*, 398 Md. 1, 16 –17 (2007)) (internal quotations omitted).

Ms. Hampton alleges that "[u]pon the 'Notarial Protest' and Plaintiff's acceptance for value, a tacit agreement was formed under the assumption that Defendant would act in good faith towards a resolution." ECF No. 3 ¶ 17. She claims that "Defendant's failure to respond or negotiate constitutes a breach of this tacit agreement, causing harm to Plaintiff." *Id.* But the mortgage payment that Ms. Hampton owes to Wells Fargo could not be paid through "credit" of Ms. Hampton's own creation. Ms. Hampton has not plausibly alleged that any "contract" was formed through her alleged use of "credit" to satisfy her mortgage obligation. ECF No. 3-1 at 2; *see Braude*, 255 Md. App. at 397 (citing *Chernick v. Chernick*, 327 Md. 470, 479 (1992)).

3.    Promissory Estoppel

To claim promissory estoppel, the plaintiff must show the existence of a

> clear and definite promise; . . .  where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;  . . . which does induce actual and reasonable action or forbearance . . . and

> . . . causes a detriment which can only be avoided by the enforcement of the promise.

*McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 372–73 (D. Md. 2005) (citing Restatement (Second) of Contracts (1981) § 90(1)).

Ms. Hampton claims that "Defendant's failure to engage in resolution discussions, despite Plaintiff's clear intentions and actions taken in reliance upon the expected resolution process, has led to detriment." ECF No. 3 ¶ 18. She further alleges that she has "relied upon Defendant's implied promise of negotiation and resolution to [her] detriment." *Id*. None of this constitutes an actionable claim for promissory estoppel, among other reasons because the undisputed record establishes that Wells Fargo has made multiple attempts to resolve disputes around Ms. Hampton's 2012 loan, *see Hampton,* 2025 WL 297849, at *1, and the March 24, 2025 "Presentment" was at least her third opportunity to pay it off.

## CONCLUSION

Even accepting Ms. Hampton's factual allegations as true, her core legal theory—redemption theory—and her specific claims of unjust enrichment, breach of contract, and promissory estoppel, do not state claims on which relief can be granted. Ms. Hampton's full obligation to pay her mortgage on the Property at issue remains. Her claims will be dismissed with prejudice.

A separate order follows.

Date:  March 4, 2026

_____/s/_____
Adam B. Abelson
United States District Judge